IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>*Plaintiff*,<br><br>*v.*<br><br>Federal Debt Assistance Association, LLC, et al.,<br><br>*Defendants*. | Case No. 1:17-cv-02997-GLR |

**DEFAULT JUDGMENT AND ORDER AGAINST DEFENDANTS FEDERAL DEBT ASSISTANCE ASSOCIATION, LLC, FINANCIAL DOCUMENT ASSISTANCE ADMINISTRATION, INC., CLEAR SOLUTIONS, INC., ROBERT PANTOULIS, DAVID PICCIONE, AND VINCENT PICCIONE**

Plaintiff, the Bureau of Consumer Financial Protection (Bureau), filed a Complaint on October 12, 2017, against Federal Debt Assistance Association, LLC, Financial Document Assistance Administration, Inc., Clear Solutions, Inc., Vincent Piccione, David Piccione, and Robert Pantoulis (collectively, Defendants) to obtain permanent injunctions, restitution, disgorgement, other equitable relief, and civil money penalties under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5565. The Complaint alleges that Defendants violated the CFPA and the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310, in connection with the marketing and sale of debt-relief services and credit-repair services.

Upon consideration of the Complaint, the Bureau's Motion for Default Judgment against Defendants and its supporting memorandum and exhibits, and the record in this matter, IT IS HEREBY ORDERED that the Bureau's Motion is GRANTED and, under



Federal Rule of Civil Procedure 55(b)(2), DEFAULT JUDGMENT shall be ENTERED AGAINST ALL DEFENDANTS.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## FINDINGS OF FACT

1. This Court has jurisdiction over the parties and the subject matter of this action. *See* 12 U.S.C. § 5565(a)(1); 28 U.S.C. §§ 1331, 1345.

2. Venue is proper in this district under 12 U.S.C. § 5564(f) because Defendants are located, reside, and do business in this district.

3. Defendants were each properly served with a Summons and the Complaint.

4. Defendants failed to answer or otherwise defend this action.

5. The Clerk of the Court properly entered default against Defendants Federal Debt Assistance Association, LLC (Federal Debt), Financial Document Assistance Administration, Inc. (Financial Document), Clear Solutions, Inc. (Clear Solutions), Robert Pantoulis, and David Piccione on January 16, 2018 (ECF No. 14), and against Vincent Piccione on March 15, 2018 (ECF No. 17).

6. The Complaint states claims upon which relief may be granted under the CFPA, 12 U.S.C. §§ 5531, 5536(a), and the TSR, 16 C.F.R. pt. 310, which implements the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C §§ 6101-6108.

7. The relief provided in this Order is appropriate and available under § 1055 of the CFPA, 12 U.S.C. § 5565, and the Telemarketing Act, 15 U.S.C. § 6102(c).

8. Because of their defaults, Defendants are deemed to have admitted the well-pleaded facts of the Complaint, and the allegations are taken as true. *See* Fed. R. Civ. P. 8.

9. Federal Debt and Financial Document are "covered persons" under the CFPA. 12 U.S.C. § 5481(6). Federal Debt and Financial Document are also "sellers" and "telemarketers" engaged in "telemarketing" and the provision of "debt relief service[s]" under the TSR. 16 C.F.R. § 310.2(o), (dd), (ff), (gg).

10. Clear Solutions is an "affiliate" of both Federal Debt and Financial Document and a "service provider" under the CFPA, 12 U.S.C. § 5481(1), (26), and therefore it is a "covered person" under the CFPA. 12 U.S.C. § 5481(6)(B).

11. To conduct the acts and practices described in the Complaint, Federal Debt, Financial Document, and Clear Solutions operated as a common enterprise with the three interrelated companies sharing officers and office space, operating under the common control of Vincent Piccione, David Piccione, and Robert Pantoulis, and failing to function as distinct, arm's-length entities. Therefore, each of the Defendant companies is jointly and severally liable for the acts and practices alleged in the Complaint.

12. Defendants David Piccione, Vincent Piccione, and Robert Pantoulis (the Principals) are "related persons" and "covered persons" under the CFPA. 12 U.S.C. § 5481(25)(B) & (C)(i)-(ii).

### Defendants violated the CFPA and TSR

13. In connection with telemarketing debt-relief services, Federal Debt and Financial Document violated the TSR because they requested and received payments (a) before they had renegotiated, settled, reduced, or altered the terms of at least one debt pursuant to a bona fide agreement or plan with the creditor or debt collector, (b) before

3

the customer had made at least one payment pursuant to that agreement or plan, and (c) in which the fee was not proportional to or a percentage of the amount saved. 16 C.F.R. § 310.4(a)(5)(i).

14. In connection with telemarketing credit-repair services, Federal Debt and Financial Document violated the TSR because they requested and received fees before (a) the promised timeframe for providing the services had expired and (b) the seller had provided a consumer credit report demonstrating that the promised results had been achieved and the report was issued more than six months after the results were achieved. 16 C.F.R. § 310.4(a)(2).

15. In connection with telemarketing their debt-relief services and credit-repair services, Federal Debt and Financial Document violated the TSR because they mispresented that they would reduce consumers' principal balances by at least 60%, leave consumers' creditors without recourse on the debts, and increase consumers' credit scores. 16 C.F.R. § 310.3(a)(2)(iii). These representations were false, misleading, and unsubstantiated.

16. In connection with telemarketing their debt-relief services, Federal Debt and Financial Document violated specific provisions of the TSR governing debt-relief services because they mispresented that they would reduce consumers' principal balances by at least 60% and leave consumers' creditors without recourse on the debts. 16 C.F.R. § 310.3(a)(2)(x). These representations were false, misleading, and unsubstantiated.

17. In connection with telemarketing their debt-relief and credit-repair services, Federal Debt and Financial Document violated the TSR because they instructed consumers to stop making payments on the debts enrolled in its program but never

disclosed that doing so may lead to the consumer being sued or to an increase in the amount owed. 16 C.F.R. § 310.3(a)(1)(viii)(C).

18.     In connection with telemarketing their debt-relief and credit-repair services, Federal Debt and Financial Document violated the TSR because they misrepresented their affiliation with, endorsement by, or sponsorship by the Federal government, specifically the Bureau and the Federal Trade Commission.

19.     For each TSR violation committed by Federal Debt and Financial Document set forth above, Clear Solutions, David Piccione, Vincent Piccione, and Robert Pantoulis also violated the TSR by providing substantial assistance or support to Federal Debt and Financial Document while they knew or consciously avoided knowing that Federal Debt and Financial Document had engaged in an act or practice that violated the TSR. 16 C.F.R. § 310.3(b).

20.     Federal Debt and Financial Document violated the CFPA's prohibition of deceptive acts or practices by mispresenting that they would reduce consumers' principal balances by at least 60%, leave consumers' creditors without recourse on the debts, and increase consumers' credit scores. 12 U.S.C. §§ 5531(a), 5536. These representations, which were false, misleading, and unsubstantiated, were material and likely to mislead consumers acting reasonably under the circumstances.

21.     Federal Debt and Financial Document violated the CFPA's prohibition of deceptive acts or practices by misrepresenting an affiliation with, endorsement by, or sponsorship by the Federal government, specifically the Bureau and the Federal Trade Commission. 12 U.S.C. §§ 5531(a), 5536. These representations were false, material, and likely to mislead consumers acting reasonably under the circumstances.

22.     For each CFPA violation committed by Federal Debt and Financial Document set forth above, Defendants Clear Solutions, David Piccione, Vincent

Piccione, and Robert Pantoulis violated the CFPA by knowingly or recklessly providing substantial assistance to Federal Debt's and Financial Document's deceptive acts or practices. 12 U.S.C. § 5536(a)(3). The Principals also each violated the CFPA by directly contributing to the development, review, and approval of materials containing the misrepresentations. 12 U.S.C. §§ 5531(a), 5536.

23. Given the Complaint's well-pleaded allegations and Defendants' failure to answer or defend, the Court enters a default judgment against Defendants for violations of the TSR, 16 C.F.R. §§ 310.3 (a)(i)(viii)(C), (a)(2)(iii), (vii), (x), and 310.4(a)(2), (a)(5)(i), and for violations of the CFPA, 12 U.S.C. §§ 5531, 5536.

24. Each of the Defendants is jointly and severally liable for each of the violations alleged in the Complaint.

## Remedies

25. The CFPA empowers this Court to order injunctive and other relief, restitution, and civil money penalties. 12 U.S.C. § 5565.

26. The Bureau established through competent evidence that the financial harm to consumers from Defendants' violations was at least $4,972,389.31, which is the amount paid to Defendants by consumers.

27. Absent a permanent injunction, there is a reasonable likelihood that Defendants will continue to engage in the unlawful conduct alleged in the Complaint or similar misconduct. Defendants' unlawful conduct as alleged in the Complaint justifies permanent injunctive relief.

28. The Bureau is entitled to an Order imposing permanent injunctive relief, requiring Defendants to make restitution of $4,972,389.31, and requiring Defendants to pay a civil money penalty in the amount of $16 million.

29. The Court exercises its discretion to order injunctive and monetary relief, without holding an evidentiary hearing.

30. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided at law, including both civil and criminal remedies.

31. Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

32. **"Affected Consumer"** means any person who paid any money to Defendants to enroll or participate in Defendants' debt-management program, including the Debt-Relief or Credit-Repair Services offered by Defendants.

33. **"Bureau"** means the Bureau of Consumer Financial Protection.

34. **"Clear Solutions"** means Clear Solutions, Inc., and its successors and assigns.

35. **"Credit-Repair Service"** means any good or service represented to remove derogatory information from or to improve a consumer's credit history, credit record, or credit rating.

36. **"Debt-Relief Service"** means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

37. **"Defendants"** means Federal Debt, Financial Document, Clear Solutions, Vincent Piccione, David Piccione, and Robert Pantoulis.

38. **"Effective Date"** means the date on which this Order is entered on the docket.

39. **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

40. **"Federal Debt"** means Federal Debt Assistance Association, LLC, and its successors and assigns.

41. **"Financial Advisory Services"** means services (other than services relating to securities provided by a person regulated by the Securities Exchange Commission or a person regulated by a State securities commission, but only to the extent that such person acts in a regulated capacity) to consumers on individual financial matters or relating to proprietary financial products or services (other than by publishing any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation, including publishing market data, news, or data analytics or investment information or recommendations that are not tailored to the individual needs of a particular consumer), including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure.

42. **"Financial Document"** means Financial Document Assistance Administration, Inc., and its successors and assigns.

43. **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Federal Debt, Financial Document, Clear Solutions, Vincent Piccione, David Piccione, or Robert Pantoulis based on substantially the same facts as described as in the Complaint.

44. **"Relevant Period"** means January 14, 2016, through the Effective Date.

8

# ORDER

## I.

## Permanent Ban on Telemarketing Debt-Relief and Credit-Repair Products or Services

**IT IS ORDERED** that:

45. Defendants and their, officers, directors, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who have actual notice of this Order, whether acting directly or indirectly, are permanently restrained from the following:

   a. participating in telemarketing or assisting others engaged in telemarketing any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service;

   b. advertising, marketing, promoting, offering for sale, selling, providing, collecting any fees for, or assisting in the sale of any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service;

   c. assisting any person advertising, marketing, promoting, offering for sale, selling, providing, or collecting any fees for any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service; and

   d. receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in or assisting in advertising, marketing, promoting, offering for sale, selling, providing, collecting any fees for, or assisting in the sale of any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service.

46. Defendants and their officers, directors, agents, and employees, and attorneys, whether acting directly or indirectly, must immediately cease and desist assessing and collecting any fees from any consumer for any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service, including any existing or future agreements for such services.

## II.

## Prohibition on Deceptive Practices

**IT IS FURTHER ORDERED** that:

47. Defendants and their officers, directors, agents, servants, and employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Order whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, providing, collecting any fees for, or assisting in the sale of any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service, or any other consumer financial product or service, may not misrepresent, or assist others in misrepresenting, expressly or impliedly:

   a. the ability to remove derogatory information from, or improve, a consumer's credit history, credit record, or credit rating;

   b. the ability to renegotiate, settle, reduce, or otherwise alter the terms of at least one debt;

   c. any material aspect of the performance, efficacy, nature, or central characteristics of the service;

   d. the legal effect of the service on a consumer's debt or a creditor's ability to take action, including legal action, against a consumer to collect on the debt;

10

    e. the requirements imposed upon creditors or collectors to comply with the law;

    f. the amount of money that a consumer will save or the amount of debt reduction that a consumer will experience using such service;

    g. any material restriction, limitation, or condition to purchase, receive, or use the service; and

    h. the affiliation with, or endorsement or sponsorship by, any government entity.

48. In addition, Defendants, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, providing, collecting any fees for, or assisting in the sale of any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service, or any other consumer financial product or service, are hereby permanently restrained and enjoined from making any representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any Financial Advisory Service, unless, at the time such representation is made, they possess and rely upon competent and reliable evidence that substantiates that the representation is true.

### III.

### Prohibited Use of Customer Information

**IT IS FURTHER ORDERED** that:

49. Defendants and their officers, directors, agents, servants, employees, and attorneys, those persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from customer information obtained by Defendants before the Effective Date, including the name, address, telephone number, email address, social security number,

financial information, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account). Customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

50. Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined from attempting to collect, collecting, selling, or assigning, or otherwise transferring any right to collect payment from any consumer who purchased or agreed to purchase any Financial Advisory Service, Debt-Relief Service, or Credit-Repair Service from Defendants.

## IV.

## Order to Pay Redress and a Civil Money Penalty

**IT IS FURTHER ORDERED** that:

51. Judgment for equitable monetary relief is entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $4,972,389.31 for the purpose of providing redress to Affected Consumers. The monetary judgment set forth in this Section is immediately due and payable to the Bureau upon entry of this Order and is enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for any of the Defendants.

52. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in the Complaint and continuing to the entry of this Order, and taking into account the factors in 12 U.S.C. § 5565(c)(3), judgment for a civil penalty is entered against Defendants, jointly and severally, in the amount of $16 million.

## V.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

53. The monetary judgment set forth in Section IV:

    a. is immediately due and payable to the Bureau upon entry of this Default Judgment and Order; and

    b. is enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for any of the Defendants.

54. Defendants must relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law, and no part of the funds may be returned to Defendants.

55. Any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or person, whether located within the United States or outside the United States, that holds, controls or maintains accounts or assets of, on behalf of, or for the benefit of, any of the Defendants shall turn over such account or asset to the Bureau or its designated agent within ten (10) business days of receiving notice of this Order by any means, including but not limited to via facsimile or email. Any such funds must be paid to the Bureau by wire transfer to the Bureau or to the Bureau's agent and according to the Bureau's wiring instructions.

56. Any funds received by the Bureau for redress under this Order will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used to provide redress to Affected Consumers for the fees they paid to Defendants and for any attendant expenses for the administration of any such redress.

57.  If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the United States Treasury as disgorgement. Defendants will have no rights to challenge any actions that the Bureau or its representatives may take under this paragraph.

58.  The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

59.  Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

   a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

60.  To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in any Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury.

Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

61. The civil money penalty imposed by this Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to each defaulting Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

62. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

63. The facts alleged in the Bureau's Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by the Bureau to enforce this Order or its rights to any payment or monetary judgment under the Order, such as a non-dischargeability complaint in any bankruptcy case.

64. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under § 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

## VI.

## Service and Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

65. This Order may be served upon Defendants by certified mail, by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau through personal service or alternative service approved by this Court by order on January 11, 2018.

66. The Court will retain jurisdiction of the matter for purposes of construction, modification, and enforcement of this Order.

67. The Clerk is DIRECTED to CLOSE this case.

It is SO ORDERED.

DATED this 22nd day of May, 2018.

_____
George L. Russell, III
United States District Judge